# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3826

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri |
| | * | |
| Lorenzo Brooks, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: June 14, 2011
Filed: July 14, 2011

———————

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

———————

READE, District Judge.

Appellant Lorenzo Brooks challenges his conviction by a jury for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Brooks contends that the district court[2] erred by failing to suppress evidence, that a law enforcement witness should have been prohibited from testifying about a conversation with a

———————

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[2] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

confidential informant ("CI") and that the evidence was insufficient to sustain his conviction. We affirm.

I.

On July 11, 2003, Officer Steve Schwerb met with a CI, who had previously provided reliable information. The CI told Officer Schwerb that Brooks was selling drugs and guns from his basement apartment at 3909 Lexington in St. Louis, Missouri. The CI told Officer Schwerb that customers would knock on the basement door and provide Brooks with money. After this exchange, Brooks would go into his residence and return with firearms and/or drugs.

About an hour after speaking with the CI, Officer Schwerb and three other officers drove to 3909 Lexington. The building is an urban multi-family dwelling with two doors in the front which lead to separate units. There is a public sidewalk in the front of the building. A gated chain-link fence runs between the building and 3907 Lexington. In the back of 3909, there is a gated chain-link fence. The fences are approximately three feet high. A door in the back of 3909 that faces the backyard leads to a shared washroom that is accessible to all of the tenants. Off of the washroom is an interior door that leads to Brooks's apartment. A public alley is located directly behind the backyard area. Both the backyard and the staircase leading to the back door are visible from neighboring properties. From the public alley, the top of the staircase can be seen.

When they arrived at 3909 Lexington, the officers drove up a back alley to view the building and to determine if there was a suitable place to conduct surveillance. From this vantage point, they were unable to determine if the building had a door leading to the basement. The officers then drove to the front of the building where they parked their car. Two officers approached the front of the building and two officers walked around to the back of 3909. Although there were

-2-

fences around the property, all gates were open and unlocked. There were no signs indicating that visitors were unwelcome. When they reached the back of 3909, the officers made eye contact with a man who subsequently fled through the backyard into the alley. As this unidentified man fled, officers observed another man, later identified as Brooks, at the top of the staircase leading to the basement door. Brooks was holding a long object in a bag. From his vantage point in the backyard, Officer Schwerb suspected the object was a firearm. When Brooks saw the officers, he discarded the bag into a crawl space area to his right, and ran down the stairs into the building. Officer Schwerb followed him down the stairs and, at that point, conclusively identified the item as a firearm. Another officer retrieved the firearm and identified it as a twenty-gauge shotgun. Officer Schwerb arrested Brooks and advised him of his Miranda[3] rights. Brooks then admitted possession of the firearm, stating that someone left the gun in his basement and that he was taking the gun to the dumpster when the officers first observed him.

Brooks proceeded to trial on the firearm charge.[4] On the morning of trial, Brooks filed a motion in limine, asking the district court to bar testimony related to the specific information the CI gave Officer Schwerb. Brooks argued that the CI's statements were testimonial hearsay and admitting them would violate the Confrontation Clause of the Sixth Amendment to the Constitution. The district court disagreed, allowing the government to question Officer Schwerb regarding the CI's information. On the first day of trial, Officer Schwerb testified that he and the other officers went to the property at issue to "investigat[e] some information [he] had

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] After the hearing on the motion to suppress, a grand jury returned a superseding indictment against Brooks, which added a perjury charge based upon his testimony at the hearing on the motion to suppress. The district court severed the counts and ordered that the trial on the firearm charge proceed before trial on the perjury charge.

received about a Mr. Brooks selling narcotics and firearms from that location." On the second day of trial, the government proposed a limiting jury instruction relating to Officer Schwerb's testimony concerning his conversation with the CI. The proposed instruction stated:

> You have heard testimony that police officers were investigating information that the defendant was selling guns and drugs from the basement door of 3909 Lexington. You may consider the testimony regarding the information received by the police officers only as it relates to explaining the police officers' investigation and subsequent actions, and you may not consider such testimony as proof that the defendant was selling guns and drugs.

Brooks objected to giving the instruction, and the district court declined to give it. Later that day, it became apparent that Brooks had absconded, and the trial continued in abstentia. After a brief deliberation, the jury returned a guilty verdict. Approximately five years later, the United States Marshal Service apprehended Brooks in Kentucky. The Marshals returned Brooks to Missouri, where the district court sentenced him to 210 months in prison.

II.

Brooks first appeals the district court's denial of his motion to suppress, arguing that the officers unlawfully encroached upon the curtilage of his home to seize the firearm. We review a district court's conclusions of law regarding a motion to suppress de novo and findings of fact for clear error. United States v. McCarty, 612 F.3d 1020, 1024 (8th Cir. 2010). The district court held that the officers did not violate the Fourth Amendment when they entered the backyard of the building, pursued Brooks down the staircase and retrieved the discarded firearm. Specifically, the district court held that the entire backyard was not within the home's curtilage, and that the officers were entitled to retrieve the firearm pursuant to the plain view

doctrine. Because we agree with the district court that law enforcement lawfully seized the firearm, we affirm its holding that Brooks's Fourth Amendment rights were not violated.

The plain view doctrine allows an "'officer to seize evidence without a warrant when (1) the officer does not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself.'" United States v. Wilson, 565 F.3d 1059, 1064-65 (8th Cir. 2009) (quoting United States v. Abumayyaleh, 530 F.3d 641, 648-49 (8th Cir. 2008)). This case turns primarily on the first prong of the test, which requires us to decide what portions of the backyard, if any, were within the curtilage of the home.

"[T]he Fourth Amendment protects the curtilage of a house[.]" United States v. Dunn, 480 U.S. 294, 300, 107 S. Ct. 1134, 94 L. Ed.2d 326 (1987). "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." Id. Four factors are relevant to whether a particular area should be considered within the curtilage:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

Id. at 301. Before the district court, Brooks argued that the entire backyard was curtilage. On appeal, however, Brooks essentially concedes that the backyard was not curtilage.[5] Instead, Brooks focuses strictly on the basement staircase and argues that

---

[5] For example, Brooks does not contest the district court's finding that officers did not open a gate to enter the property, as they were unlocked and open.

even if the backyard cannot be characterized as part of his home's curtilage, the staircase should be. He argues that this distinction is critical, because it was only when Officer Schwerb was in the staircase that he was able to conclusively determine that Brooks was carrying a firearm.

Regardless of how we frame the issue, Brooks's argument is unavailing. Neither the staircase nor any portion of the backyard can be characterized as curtilage. The parties agree that the staircase in question leads to the basement of the multi-family dwelling, in which there is a common area shared by all tenants. The staircase does not lead immediately to Brooks's residence. It is well-settled that there exists no "generalized expectation of privacy in the common areas of an apartment building." United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999). Further, it is undisputed on appeal that the gates were open and unlocked at the time law enforcement initially approached the building. Additionally, the backyard and the staircase are visible from public areas, which is inconsistent with the notion that they would be treated as extensions of the home itself. See United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984) (holding that the defendants did not have a reasonable expectation of privacy where a parking lot was located in a commercial area, adjacent to public streets on three sides and had a fenced gate that was completely open). Finally, there were no "no trespassing" signs or anything similar on the property. Because the staircase was not within the curtilage of the residence, the officers "did not violate the Fourth Amendment in arriving at the place from which the [firearm] could be plainly viewed."[6] Wilson, 565 F.3d at 1064.

---

[6] The government offers several alternative legal theories justifying the officers presence on the staircase. It argues that even if we were to characterize the staircase as curtilage, the officers were still justified in approaching the door. Because we find that the area in question was not protected curtilage, we need not reach this argument.

We also reject any contention that the gun's "incriminating nature [was not] immediately apparent." Wilson, 565 F.3d at 1064-65. "The 'immediately apparent' requirement means that officers must have 'probable cause to associate the property with criminal activity.'" United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (quoting United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990)). "Hidden guns, even badly hidden guns, are by their nature incriminating." Hatten, 68 F.3d at 261. Here, not only was Brooks attempting to conceal a firearm, which is itself a violation of Missouri law, but the behavior the officers observed in the back of the building corroborated a previously reliable CI's statements.

Finally, the "the officer ha[d] a lawful right of access to the object itself," Wilson, 565 F.3d at 1065, because the firearm was on the ground in front of the officer who retrieved it. See United States v. Chipps, 410 F.3d 438, 443 (8th Cir. 2005) (holding that an officer had a lawful right to access a bloody sweatshirt that was "right in front of him on the ground").

Because the officers lawfully seized the firearm pursuant to the plain view doctrine, the district court did not err in denying Brooks's motion to suppress.[7]

III.

Next, Brooks asserts that the district court admitted portions of Officer Schwerb's testimony in violation of his constitutional rights. At trial, Officer

---

[7] Alternatively, the officers were justified in seizing the firearm, because Brooks abandoned the firearm by denying ownership of it and by physically discarding it. See United States v. James, 534 F.3d 868, 873 (8th Cir. 2008) (noting that "denial of ownership" and "physical relinquishment" of property may constitute abandonment and that "[a] warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment").

Schwerb testified that he and the other officers went to the property at issue to "investigat[e] some information [he] had received about a Mr. Brooks selling narcotics and firearms from that location." Brooks argues that the district court erred in admitting the CI's statement through the testimony of Officer Schwerb. Specifically, he argues that this statement was testimonial hearsay and was admitted in violation of the Sixth Amendment's Confrontation Clause, which states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This court reviews the district court's evidentiary determinations for abuse of discretion, and we review de novo whether the admission of certain evidence violated Brooks's constitutional rights. United States v. Montgomery, 635 F.3d 1074, 1091 (8th Cir. 2011).

"[T]he Confrontation Clause applies only to testimonial hearsay statements." United States v. Holmes, 620 F.3d 836, 841 (8th Cir. 2010) (citing Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). Hearsay evidence is "evidence offered to prove the truth of the matter asserted." Id. "A confidential informant's statements to a law enforcement officer are clearly testimonial." United States v. Lopez-Medina, 596 F.3d 716, 730 (10th Cir. 2010). "'[O]ut-of-court statements are not hearsay if they are offered to explain the reasons for or propriety of a police investigation.'" Holmes, 620 F.3d at 841 (quoting United States v. Malik, 345 F.3d 999, 1001 (8th Cir. 2003)); see also United States v. Brown, 560 F.3d 754, 764-65 (8th Cir. 2009) (an officer's testimony regarding an out of court statement used to explain why he conducted his investigation in a particular way did not implicate the Confrontation Clause). However, we have cautioned against allowing all explanatory testimony: "[t]his type of evidence will be allowed into evidence . . . only when the propriety of the investigation is at issue in the trial." Holmes, 620 F.3d at 841.

In Holmes, the defendant was charged with possession with intent to distribute cocaine and possession of a firearm as a felon. The defendant did not contest the

propriety of the investigation or the fact that law enforcement had a valid search warrant. Rather, his defense at trial was to deny his connection to the house from which the officers recovered firearms and drugs pursuant to a valid warrant. In these circumstances, we held that it would have been appropriate for the officer to testify whether the CI had ever told the officer that he or she saw the defendant at the house. However, the officer's testimony that the CI had told the officer that the defendant was a drug dealer violated the Confrontation Clause. Id. at 842.

In this case, the statement at issue was not offered to prove the truth of the matter asserted—that is, that Brooks was indeed a drug and firearms dealer. It was offered purely to explain why the officers were at the multi-family dwelling in the first place, which distinguishes this case from Holmes. In Holmes, it was undisputed that officers had a valid warrant. Accordingly, less explanation was necessary. Here, the CI's information was necessary to explain why the officers went to the residence without a warrant and why they would be more interested in apprehending the man on the stairs than the man who fled the scene. Because the statement was offered only to show why the officers conducted their investigation in the way they did, the Confrontation Clause is not implicated here.

IV.

Finally, Brooks challenges the district court's denial of his motion for judgment of acquittal. We review the district court's decision to deny a motion for judgment of acquittal "de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003). "We may reverse only if no reasonable jury could have found [Brooks] guilty beyond a reasonable doubt." Id.

In this case, Officer Schwerb saw Brooks carrying what he suspected was a firearm. Officer Schwerb later confirmed this suspicion when he saw the firearm in the crawl space. Additionally, Brooks admitted he possessed the firearm when he told the officers that he found the gun in his basement and was on his way to the dumpster to dispose of it. Affording all reasonable inferences to the verdict, there is more than sufficient evidence to sustain the conviction.

For these reasons we affirm the judgment of the district court.

_____