# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1362
_____

United States of America

*Plaintiff - Appellee*

v.

William Cannon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: November 16, 2012
Filed: January 8, 2013

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

William Cannon pled guilty to two counts of sexual exploitation of a minor and two counts of receipt of child pornography, conditioned on his right to appeal the denial of his motion to suppress. Cannon appeals the denial of his motion to suppress as well as his sentence. We affirm.

# I.

On July 14, 2010, Captain Fire Investigator Inspector David Creek, a deputy fire marshal, conducted a routine fire safety inspection at EZ Credit Auto Sales ("EZ Credit"), a car dealership located in Springdale, Arkansas. During the course of his inspection, Captain Creek came upon a locked door. He asked Juan Carlos Figueroa, an EZ Credit manager who had accompanied him during the inspection, what was behind the door. Figueroa replied that it led to "Billy's rooms," referring to William Cannon, a car detailer and night watchman for EZ Credit. Figueroa added that the only key belonged to Cannon. That day, Cannon was off-site working at a different EZ Credit location.

Captain Creek told Figueroa that he needed to see the rooms to complete the inspection, so Figueroa called Cannon and told him to bring his key. When Cannon arrived, he first requested time alone in the rooms, during which Captain Creek heard a large amount of rustling. When Cannon finally opened the door at Captain Creek's request, from the doorway Captain Creek observed that the walls were covered from floor to ceiling with what appeared to be hundreds of pictures of a particular young male's face. He then entered the main room and looked into an adjoining bathroom, which had a collection of bound, blindfolded, and mutilated naked dolls hanging from the ceiling. Captain Creek also saw a third adjoining room. Above the doorway to that room, a sign was posted that read "Boy's Club." Continuing his inspection, Captain Creek entered this third room, where he found a child's bed, many more mutilated dolls, a tripod for a camera, a big-screen TV, and several children's toys. Captain Creek noted that there were several pictures of nude children on the walls and that the walls appeared as if some things had been torn down immediately before the inspection. Captain Creek then called the police and told the dispatcher that he believed he had discovered a child pornography operation. While he waited for police to arrive, he saw Cannon remove several items from the rooms. Captain Creek later provided a written statement summarizing what he had observed.

Officer Eric Holland, a uniformed patrolman for the Springdale Police Department, was the first officer on the scene. Although Officer Holland entered the rooms with Cannon's consent and formed the impression that the rooms were Cannon's residence, he did not discuss his observations or his impression with the detectives who ultimately prepared the search warrant application, and he was not involved with the subsequent investigation.

Soon after Officer Holland arrived, Detectives Al Barrios and Darrell Hignite, of the Springdale Police Department Criminal Investigative Division, arrived at EZ Credit. Detective Barrios first made contact with Captain Creek, who explained that he had seen some disturbing posters, signs, and images, including images of nude young boys under the age of thirteen. Captain Creek also told Detective Barrios that he suspected Cannon had removed several pictures from the walls between Captain Creek's initial entry and Detective Barrios's arrival.

When Detectives Barrios and Hignite first approached the rooms, the door had been left open. From the hallway they were able to see what they characterized as one to two hundred photographs of a particular boy's face covering the walls and a large number of mutilated baby dolls hanging from the bathroom ceiling. Detective Barrios then entered the rooms to confirm the rest of Captain Creek's observations. There he found several handmade signs reading "kill little boys," "I eat boys," "boys only," "I ♡ boys," "boys rule," and "boy killer." There were many pictures of boys' faces, boys in various stages of undress, and boys sleeping. There was also one poster of a prepubescent boy showing full-frontal nudity.

After discovering the child's bed in the third room and deciding that he would need a warrant to search further, Detective Barrios took several photographs of the rooms and instructed other officers to secure the premises while he left to obtain a search warrant. Detectives Barrios and Hignite then left EZ Credit and went to the police station with Cannon, who had consented to an interview, to prepare the warrant

application. During the interview, Cannon told Detective Barrios that he was an artist and that he believed others thought his art was offensive. He claimed that the image showing full-frontal nudity came from a magazine, but he later stated that it came from a book. Cannon also told Detective Barrios that he had no home and that he stayed at EZ Credit three nights a week while serving as a night security guard for the business.

Based on the information they had obtained, Detectives Barrios and Hignite prepared a search warrant application, which also included Captain Creek's handwritten statement, and presented it to a state court judge. The detectives' affidavit stated that before Captain Creek initially entered the rooms to conduct the fire inspection, Cannon told Captain Creek that he lived there. It also stated that the rooms "appeared to have someone living in [them]." It described the premises to be searched as "[t]he business . . . located at 2679 N. Thompson in Springdale, Washington County, Arkansas. The residence is a business structure consisting of one (1) unit . . . owned by E/Z Credit Auto Sales Inc." The affidavit did not mention that Cannon claimed the poster of the fully nude child was art or that it was allegedly taken from a book. The state court judge issued a search warrant allowing the detectives to search EZ Credit as well as a car allegedly owned by Cannon.

The officers then returned to EZ Credit and executed the warrant. They seized approximately fifteen pictures of nude children, two laptops, approximately twelve video cassettes, and several handwritten journals, among other things. One of the laptops contained thousands of images depicting sexually explicit conduct involving children and its internet browsing history revealed that Cannon had made multiple visits to child pornography websites. Police also found a video that Cannon had created, which depicted a minor female engaging in sexually explicit conduct.

Cannon moved to suppress the items seized pursuant to the search warrant, as well as statements he made while the warrant was executed. He argued that the

search warrant lacked probable cause because it was based on information gathered by Detectives Barrios and Hignite in violation of Cannon's Fourth Amendment rights. A magistrate judge[1] determined that Detectives Barrios and Hignite violated Cannon's Fourth Amendment rights during the initial warrantless entry because Cannon had a reasonable expectation of privacy in the rooms. However, the magistrate judge further concluded that the exclusionary rule did not apply to the fruits of the warrant-based search due to both the independent source doctrine, *see Murray v. United States*, 487 U.S. 533 (1988), and the *Leon* good faith exception, *see United States v. Leon*, 468 U.S. 897, 920-21 (1984). The district court[2] adopted the magistrate judge's report and recommendations over Cannon's objection.

Cannon subsequently entered a conditional plea of guilty to two counts of sexual exploitation of a minor, 18 U.S.C. §§ 2251(a) and (e), as well as two counts of receipt of child pornography, 18 U.S.C. §§ 2252(a)(2) and (b)(1). The district court sentenced Cannon to 840 months' imprisonment. At sentencing, the district court imposed a four-level enhancement based on its finding that one of the videos seized from Cannon "involved material that portrays sadistic or masochistic conduct or other depictions of violence." *See* U.S.S.G. § 2G2.1(b)(4).

## II.

"On appeal from the denial of a motion to suppress, we review a district court's findings of fact for clear error and its determination of probable cause and the application of the *Leon* exception *de novo*." *United States v. Houston*, 665 F.3d 991,

---

[1]The Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas.

[2]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

994 (8th Cir. 2012) (quoting *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008)), *cert. denied*, 566 U.S. ---, 132 S. Ct. 2418 (2012).

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Davis v. United States*, 564 U.S. ---, 131 S. Ct. 2419, 2426 (2011) (quoting U.S. Const. Amend. IV). Ordinarily, "[e]vidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, 'cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)), *cert. denied*, 565 U.S. ---, 132 S. Ct. 1065 (2012). Because exclusion is a prophylactic remedy, however, there are some instances where a Fourth Amendment violation does not trigger the exclusionary rule. *See Davis*, 131 S. Ct. at 2426 ("Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976))).

One exception to the exclusionary rule occurs "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even if the warrant is subsequently invalidated. *Leon*, 468 U.S. at 920-21. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926. We have recognized four circumstances that preclude a finding of good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia

of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *Perry*, 531 F.3d at 665 (8th Cir. 2008)), *cert. denied*, 565 U.S. ---, 132 S. Ct. 1713 (2012).

Although Cannon does not challenge Captain Creek's inspection of the rooms, he does claim that the *Leon* good-faith exception to the exclusionary rule should not apply in this case because Detectives Barrios and Hignite violated his Fourth Amendment rights when they initially entered his living quarters without a warrant, consent, or exigency. He also argues that the detectives' warrant application was misleading because they failed to tell the judge that the poster of the nude boy allegedly came from an art book. We will assume, for purposes of this appeal, that the detectives violated Cannon's Fourth Amendment rights during the initial entry, but we conclude that the *Leon* exception applies. *Cf. United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) (noting that we do not need to review the existence of probable cause as part of a *Leon* analysis).

We have applied *Leon* where, as here, the search warrant application cites information gathered in violation of the Fourth Amendment. *See, e.g.*, *United States v. Kiser*, 948 F.2d 418, 421 (8th Cir. 1991); *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989) ("[E]vidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have believed the seizure valid."). For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the detectives' prewarrant conduct must have been "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (quoting *White*, 890 F.3d at 1419). If "the officers' prewarrant conduct is

'clearly illegal,' the good-faith exception does not apply." *Id.* (quoting *United States v. O'Neal*, 17 F.3d 239, 242-43 n.6 (8th Cir. 1994)).

Cannon argues that *Leon* does not apply because the detectives did not have consent for their initial entry and because there were no exigent circumstances to justify the warrantless entry. The good-faith exception applies in this case, however, because it was objectively reasonable when they first entered the rooms for Detectives Barrios and Hignite to believe that they simply were entering rooms that were part of a car dealership business, EZ Credit. Although there is some evidence that the detectives knew Cannon had the only key to the room, which could imply a privacy interest, other facts overwhelmingly suggested that Cannon had no such interest. The detectives had responded to a call about a potential child pornography operation at a car dealership, not a residence. When the detectives arrived at EZ Credit, it was open for business, there were cars for sale on the lot, and there were both employees and customers present. EZ Credit also is located in an area zoned for business use, where residential use is prohibited.

Moreover, given Cannon's responsibilities as both a car detailer and night watchman, there are numerous explanations for the fact that he alone had a key unrelated to any potential privacy interest. The rooms could have been a storage space for toxic chemicals used to clean cars, or they could have housed expensive security equipment. In either case, it would be logical for Cannon to have the only key, but in neither case would it obviously follow that Cannon had a legitimate expectation of privacy in the rooms. After seeing the child's bed in the third room, Detective Barrios did determine that Cannon may have been living in the rooms, and therefore, might have a reasonable expectation of privacy in them. But at that point, Detective Barrios discontinued the search, exited the rooms, and obtained a search warrant.

In light of these facts, the district court made the following findings with respect to what was known by Detectives Barrios and Hignite: (1) although Officer Holland, the first to arrive on the scene, was aware that Cannon lived in "Billy's rooms," he did not discuss this fact with Detectives Barrios and Hignite prior to their entry; (2) Captain Creek told the detectives that Cannon lived in the rooms, but only after they already had entered the rooms and made their observations; and (3) the detectives did not observe the bed on the floor in the back room until well after their entry. After reviewing the record, we have determined that these findings are not clearly erroneous. Based on these factual findings, we agree with the district court that the detectives reasonably could have believed that they were entering another part of the car dealership, not a private residence, with EZ Credit's consent. As a result, the detectives' pre-warrant conduct was "close enough to the line of validity" to make their belief in the validity of the subsequent warrant "objectively reasonable." *Conner*, 127 F.3d at 667.

Furthermore, the detectives fully disclosed the nature of the rooms to the state court judge in the warrant application. They noted that in the course of their initial inspection of the rooms, they discovered that someone appeared to be living there. The detectives also disclosed that after their initial entry they discovered that Cannon had told Captain Creek that he lived in the rooms. Once the state court judge considered these facts and issued the warrant, it was reasonable for the detectives to believe the warrant was valid. To the extent that such disclosures might undermine the validity of the warrant, "[t]he error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." *Davis*, 131 S. Ct. at 2428 (alteration in original) (quoting *Leon*, 468 U.S. at 922).

Cannon also argues that *Leon* does not apply because the detectives intentionally misled the issuing judge by omitting from the affidavit that the only observed picture depicting a fully nude child was obtained from an art book. *See*

*United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012) ("In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit . . . .") (quoting *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007)). However, the detectives submitted many other incriminating facts in the affidavit. In addition to the nude poster, they observed disturbing signs, mutilated baby dolls, numerous pictures of young boys in various stages of undress, and a camera tripod. At the suppression hearing, Detective Barrios testified at length about how the totality of his observations led him to believe that Cannon possessed child pornography—he did not rely on the nude poster to serve as the sole basis for establishing probable cause. Moreover, there is no evidence that the detectives knew the poster came from an art book aside from the claims Cannon made in his interview. Even if the detectives should have known this, as Cannon contends they should, its omission did not make the affidavit misleading given the overall content of the rooms.

The detectives also had reason to believe that Cannon had removed similar posters from the wall immediately before they entered. Captain Creek reported that he heard a large amount of rustling before Cannon let him into the rooms, that the walls appeared as though several posters had been hastily removed prior to his inspection, and that he saw Cannon remove items from the rooms prior to the detectives' arrival. Given this context, it would make no difference whether this particular poster could have been considered non-pornographic art for the purpose of establishing probable cause. To obtain a warrant, the detectives were not required to show that they had actually found child pornography. Rather, they needed to establish only the "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In light of these circumstances, we find that no "reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization," *Moya*, 690 F.3d at 948 (alteration in original) (quoting *Grant*, 490 F.3d at 632), even if the

-10-

detectives had known that the poster came from an art book and omitted this fact from the warrant application.

Therefore, assuming that the warrant was based on evidence collected in violation of Cannon's Fourth Amendment rights, the *Leon* good-faith exception bars application of the exclusionary rule to evidence seized pursuant to the warrant. We affirm the denial of Cannon's motion to suppress.[3]

### III.

Cannon also appeals the imposition of the § 2G2.1(b)(4) enhancement. When reviewing the district court's calculation of the United States Sentencing Guidelines advisory sentencing range, "[w]e review the district court's factual findings for clear error and its construction and application of the Guidelines *de novo*." *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009).

The district court imposed a four-level enhancement, finding that the video underlying Count II of the indictment portrayed "sadistic or masochistic conduct or other depictions of violence." *See* U.S.S.G. § 2G2.1(b)(4). "The enhancement . . . applies to material *depicting* sadistic, masochistic, or violent conduct even if those pictured were not truly engaging in painful activities." *Raplinger*, 555 F.3d at 694.

In construing § 2G2.1(b)(4), the district court relied on the PSR's unobjected-to description of the video:

> [The victim] is observed laying on her back completely nude exposing her breasts and genitalia. Cannon is heard instructing [the victim], "roll

---

[3]Because we find that the *Leon* good-faith exception precludes application of the exclusionary rule, we need not determine whether the independent source doctrine may also apply.

-11-

over, let me see your butt." [The victim] replied "no, you cut it." Cannon was then heard stating, "that's what I want to see [expletive], roll the [expletive] over." [The victim] is then observed rolling over and a small cut could be seen on her buttocks . . . .

PSR ¶ 43. Cannon argues that this video does not depict sadistic or masochistic content because it does not show Cannon cutting the victim but rather at most shows the aftermath of violent behavior. We disagree. An image does not have to depict ongoing violent conduct to be "sadistic" for the purposes of § 2G2.1(b)(4). *See Raplinger*, 555 F.3d at 691 (finding that photographs showing the victim wearing toy handcuffs depicted "sadistic, masochistic, or violent conduct pursuant to § 2G2.1(b)(4)"). In fact, we have recognized sadism to mean "the infliction of pain upon a love object as a means of obtaining sexual release," "delight in physical or mental cruelty," and "the use of 'excessive cruelty.'" *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001) (quoting *Webster's Third New International Dictionary* 1997–98 (1986)). The dialogue in the video is sufficient evidence that Cannon inflicted pain upon the victim by cutting her just prior to filming her. Then the video shows the result of his act while Cannon directs verbal abuse at the minor victim. At the very least, Cannon's conduct meets the level of cruelty this court branded as "sadism" in *Raplinger*. The district court did not err in imposing the § 2G2.1(b)(4) enhancement.

## IV.

We affirm the denial of Cannon's motion to suppress, and we affirm his sentence.

_____

-12-