# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3579
_____

United States of America

*Plaintiff - Appellee*

v.

Donnell Alfred Hopkins, also known as Smokey, also known as Smoke

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: April 13, 2016
Filed: May 31, 2016
_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.
_____

MURPHY, Circuit Judge.

A Cedar Rapids police officer ordered his narcotics dog to sniff along the exterior walls of the building in which Donnell Hopkins rented a townhome. The dog alerted after sniffing within 6 to 8 inches of Hopkins' front door. Police applied for a search warrant which an Iowa magistrate issued. When the police executed the

search warrant they found a gun and drugs on Hopkins' person and additional drugs inside the townhome.

The district court[1] denied Hopkins' motion to suppress the evidence after concluding that although the dog sniff was unconstitutional under Florida v. Jardines, 133 S. Ct. 1409 (2013), the officer had relied in good faith on the magistrate's probable cause determination and issuance of the warrant, see United States v. Leon, 468 U.S. 897 (1984). Hopkins appeals the denial of his motion to suppress as well as his argument to strike a portion of the presentence report. We affirm.

I.

Cedar Rapids police officer Al Fear received information from another officer that "a black male who went by the street name of Smoke was dealing narcotics" from one of the buildings in the Cambridge Townhomes. At around 10:00 pm on Tuesday, October 22, 2013, Officer Fear took his K-9 Marco to the location to investigate.

The Cambridge Townhomes consists of several rectangular buildings separated by a grid of streets and sidewalks. The building relevant to this case has 6 two story apartments on each side. The doors are arranged in pairs, and walkways lead from a sidewalk in the central courtyard to a concrete slab in front of each pair of doors. Each pair is separated by a wall approximately one foot wide. The remainder of the central courtyard area is covered with grass. Each unit has one first story window facing the courtyard.

Officer Fear unhooked Marco from his leash and directed him to check the building for odors. Marco ran along the sides of the building so that "he was able to

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sniff the door bottoms on every apartment." Marco detected nothing on the east side of the building. On the west side, however, Marco turned his head and began to sniff the bottom of the door of unit number 6, the second door on the center walkway. Then Marco sat and stared at the front door of unit 6, indicating to Fear that an odor of narcotics was coming from inside.

Officer Fear applied for a search warrant the next day. In his affidavit Fear stated that Marco had "sniffed the door bottoms of all the apartments from the outside common area," and that the area which attracted his special attention was "an exterior door to apartment #6 which [led] to the ouside common area of the complex." An Iowa magistrate judge signed the warrant, and Fear continued his surveillance of the apartment that week. On both Wednesday and Sunday nights he watched through binoculars as a black man, later identified as appellant Donnell Hopkins, came and went from unit 6. Subsequently Fear testified that he had seen a number of people coming and going from the apartment, engaging in what he believed to be narcotics transactions with Hopkins.

At 10:00 pm on Monday, October 28, Officer Fear and five of his colleagues arrived at the Cambridge Townhomes to execute the search warrant for unit 6. As the officers rounded the corner of the building, Fear spotted Hopkins and his brother Robert standing in front of the unit. The officers drew their weapons and shouted "police," and the two men by the unit were ordered to the ground. Hopkins complied, but Robert fled and was captured after a foot chase. A search of Hopkins revealed a loaded handgun, 45 small bags of crack cocaine, and 7 small bags of marijuana. Inside unit 6 officers found a shoebox containing heroin, cocaine, and marijuana in one of the upstairs bedrooms.

After Hopkins was indicted for possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), he moved to suppress the evidence found on him

and in the townhome.  The magistrate judge[2] concluded that the area in front of Hopkins' townhome was effectively his "front porch," and while Officer Fear did not have authority to conduct a dog sniff search in that area the Leon good faith exception applied and made the evidence admissible.  The magistrate judge further concluded that the officers had a reasonable, articulable suspicion justifying the Terry stop of Hopkins and that they had not used excessive force in drawing their weapons.  Hopkins' motion to suppress was denied, as were his objections to the magistrate judge's report and recommendation.

Hopkins entered a conditional guilty plea to the possession charge while reserving his right to appeal the searches.  At sentencing, he objected to a paragraph in the presentence report stating that a 2002 Chicago police department report reflected "that [Hopkins] is affiliated with the Vice Lords street gang" and that a 2003 report referenced "Black P Stone Gang."  Hopkins argued that these statements should be stricken for lack of evidentiary support.  Although the district court denied this request, it did not use the statements in its sentencing decision.  Hopkins was sentenced to 57 months and now appeals.

II.

We review de novo the denial of a motion to suppress, and we review the district court's underlying factual determinations for clear error.  United States v. Binion, 570 F.3d 1034, 1038 (8th Cir. 2009).  We will reverse "only if the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made."  Id. (quoting United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006)).

---

[2]The Honorable Jon Stuart Scoles, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

A.

Hopkins contends that the dog sniff at his front door was unconstitutional under Florida v. Jardines, 133 S. Ct. 1409 (2013). In Jardines, the Supreme Court held that the "use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." Id. at 1417–18. In that case Florida police had approached Jardines' home with a drug sniffing dog which began "energetically exploring" the area around his front door, eventually alerting at its base. Id. at 1413. The Court concluded that the front porch area was a "classic exemplar" of curtilage, the area "immediately surrounding and associated with the home." Id. at 1414–15. Although the officers had an implicit license to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave," they had no invitation to "introduc[e] a trained police dog to explore the area around the home in hopes of discovering incriminating evidence." Id. at 1415–16. The investigation was therefore an "unlicensed physical intrusion" of the curtilage which violated the Fourth Amendment. Id.

The question "whether a particular area is part of the curtilage of an individual's residence requires consideration of factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." United States v. Bausby, 720 F.3d 652, 656 (8th Cir. 2013) (quotations omitted). We examine four factors in particular: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. (quoting United States v. Dunn, 480 U.S. 294, 301 (1987)). These factors are not mechanically applied and are considered together. Id. at 656–57.

We applied Jardines last year in United States v. Burston, 806 F.3d 1123 (8th Cir. 2015), a case similar to the one we have here. In Burston, Officer Fear led Marco around the exterior walls of a different building at the Cambridge Townhomes. Marco alerted in front of the window of Burston's apartment which was approximately six feet from the walkway to his door. Id. at 1125. The window was partially covered by a bush, and there was a cooking grill between the door and the window. Id. We concluded that the "close proximity to Burston's apartment" of the sniffed area, six to ten inches from the window, strongly supported a finding that the area was curtilage. Id. at 1127. The cooking grill was also evidence that Burston had made personal use of the area, and the bush prevented close inspection of the window. Id. Because the police "had no license to invade Burston's curtilage," we concluded that the dog sniff was unconstitutional under Jardines. Id. at 1127–28.

The area immediately in front of Hopkins' door was also curtilage. Officer Fear testified that Marco was trained "to get as close to the source as possible" and that he was within "six to eight inches" of the door when he alerted and "actually sniffed the creases of the door." That proximity strongly supports a finding of curtilage. Burston, 806 F.3d at 1127; see id. n.6 (citing the magistrate judge's conclusion in this case). The area within a foot of the only door to the townhome would be used every day by its residents as they came and went. Photographic evidence shows that the areas next to the doors of these apartments and along the walls are used for grilling and storing bicycles. The second and fourth Dunn factors weigh against a finding of curtilage in this area because the front of the door was not enclosed by a fence or wall and was not protected from observation by visitors (though neither was the front porch in Jardines, see 133 S. Ct. at 1413). We conclude that the combination of Dunn factors supports a finding of curtilage. "[D]aily experience" also suggests that the area immediately in front of the door of the apartments in this complex is curtilage. Jardines, 133 S. Ct. at 1415 (quoting Oliver v. United States, 466 U.S. 170, 182 n.12 (1984)).

This case is not like United States v. Brooks, 645 F.3d 971, 975 (8th Cir. 2011), where we concluded that a backyard staircase in a two unit building was not curtilage. The staircase there led to a back door to a shared washroom accessible to the tenants of both units, with interior doors leading to the two apartments. Id. at 973, 975. While these stairs were part of the common area of the apartment, the area searched in this case was directly in front of Hopkins' separate front door. In Brooks we quoted United States v. McCaster for the proposition that there is no "generalized expectation of privacy in the common areas of an apartment building." 193 F.3d 930, 933 (8th Cir. 1999). The Supreme Court did not reach the expectation of privacy test from United States v. Katz in Jardines, see 133 S. Ct. at 1417, and we need not rely on Katz or McCaster to decide our case because Marco's presence on the curtilage of Hopkins' unit may be analyzed under Jardines and Burston.

United States v. Scott was also different. 610 F.3d 1009, 1015–16 (8th Cir. 2010) (rejecting a Fourth Amendment challenge to the dog sniff of a door frame in a common hallway). Both Scott and Brooks were decided before Jardines and both used an expectation of privacy analysis. Id.; see also United States v. Roby, 122 F.3d 1120, 1124 (8th Cir. 1997) (dog sniff in the common corridor of a hotel). In our case, however, there is no "common hallway" which all residents or guests must use to reach their units. Hopkins' door faced outside, and the walkway leading up to it was "common" only to Hopkins and his immediate neighbor. Even his neighbor would not pass within 6 to 8 inches of Hopkins' door when going to his own.[3]

We further conclude that Officer Fear had no license to have Marco enter the curtilage and sniff the door. See Burston, 806 F.3d at 1127–28. The walkway in this case created an implied invitation for a visitor to go up and knock on one or both of the two doors, Jardines, 133 S. Ct. at 1415–16, but not for an officer to approach with

---

[3]In this case we need not consider how Jardines applies to interior hallways of an apartment complex. United States v. Givens, 763 F.3d 987, 992 (8th Cir. 2014).

a trained police dog within inches of either of the doors "in hopes of discovering incriminating evidence," id. at 1416. The dog sniff at Hopkins' front door violated Jardines, and the warrant application was not otherwise supported by probable cause.

B.

The government's primary argument for affirmance is the good faith exception in United States v. Leon, 468 U.S. 897, 920–21 (1984). In that case the Supreme Court held that there is an exception to the exclusionary rule if "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even though a court were later to conclude that the warrant was invalid. Id. at 920. In order for the Leon good faith exception to apply to a warrant based on evidence obtained through a violation of the Fourth Amendment, "the detectives' prewarrant conduct must have been close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." United States v. Cannon, 703 F.3d 407, 413 (8th Cir. 2013) (quotation omitted). Our inquiry is confined to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

There are four circumstances which "preclude a finding of good faith" on the part of the police:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

Cannon, 703 F.3d at 412 (quoting United States v. Fiorito, 640 F.3d 338, 345 (8th Cir. 2011)); see Leon, 486 U.S. at 923. None of these circumstances is present here. Hopkins does not contend that Officer Fear made any misleading statements in his affidavit. Nor did the Iowa magistrate wholly abandon her judicial role. See Leon, 468 U.S. at 923 (citing Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)). The warrant application was not lacking in indicia of probable cause nor facially deficient due to a lack of a particularized description of the place to be searched. See id.

Officer Fear's actions were "close enough to the line of validity" to make his belief in the warrant's validity objectively reasonable. See Cannon, 703 F.3d at 413. Officer Fear testified that he was aware of the Supreme Court's holding in Jardines but he thought that it did not apply to this search. He believed there was no individualized area outside the apartments and that Marco was on a "joint sidewalk" when he sniffed Hopkins' door. In his affidavit supporting the warrant application, Fear stated that the door was "an exterior door . . . which leads to the outside common area." Since Jardines had concerned a single family residence and Burston was not yet decided, Officer Fear had an objectively reasonable belief that Jardines did not apply and that the dog sniff was legal. See Cannon, 703 F.3d at 413–14.[4]

Here, as in Cannon, Officer Fear disclosed to the Iowa magistrate the legally relevant facts about the dog sniff. See 703 F.3d at 414. His affidavit stated that Marco sniffed an exterior door "which leads to the outside common area," and the area in the center of the courtyard away from the doors and windows of the individual units is common. It also disclosed that Marco had "sniffed the door bottoms,"

_____

[4]We concluded in a Burston footnote that Officer Fear's actions there were not close enough to the line of validity for the Leon good faith exception to apply. 806 F.3d at 1129 n.8. This case is distinguishable from Burston given the shared walkway which branches off from the central sidewalk and leads to the defendant's door. Cf. id. at 1129.

indicating that Marco had to be quite close to the doors. As we explained in Cannon, "[o]nce the state court judge considered these facts and issued the warrant, it was reasonable for the detectives to believe the warrant was valid." Id. Although we conclude that the dog sniff in this case violated Jardines, the legal error "rest[ed] with the issuing magistrate, not the police officer." Id. (quotation omitted). Because the Leon good faith exception to the exclusionary rule applies, the district court did not err in denying Hopkins' motion to suppress the evidence from the search of the apartment.

C.

Hopkins also contests the district court's denial of his motion to suppress the evidence found on his person. Police officers may stop and "detain an individual for a brief period of time if they have a reasonable suspicion that criminal activity is afoot." United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). To justify a Terry stop, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. Reasonable suspicion to conduct a stop is determined by the totality of the circumstances. Walker, 555 F.3d at 719. When an officer reasonably believes that the individual he has stopped is armed, he may conduct a pat down search "to determine whether the person is in fact carrying a weapon." Terry, 392 U.S. at 24.

Here, the police officers had reasonable suspicion to stop Hopkins. They were on their way to execute the search warrant at the apartment where Marco had detected an odor of narcotics and where Hopkins had been seen making suspected drug transactions. The officers thus had a reasonable, articulable suspicion that illegal drug activity was taking place. Although Hopkins contends that the surveillance of his apartment and the execution of the search warrant were fruits of the unlawful dog sniff, the officers' investigation was made in reasonable reliance on the state

magistrate's issuance of the warrant. The officers' decision to conduct a pat down search was also justified under United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005), since "weapons and violence are frequently associated with drug transactions." We conclude that the district court did not err in denying Hopkins' motion to suppress the gun and drugs found on his person.

III.

Hopkins contends that the district court should have stricken the statements in the presentence report identifying him as a gang member because they were not supported by evidence and thus violated his due process rights. When a defendant objects to factual statements contained in such a report, "the sentencing court may not rely on those facts unless the government proves them by a preponderance of the evidence." United States v. Bowers, 743 F.3d 1182, 1184 (8th Cir. 2014). The court may determine that a ruling on a disputed part of the report "is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing" and then attach that determination to the copy of presentence report made available to the Bureau of Prisons. Fed. R. Crim. P. 32(i)(3)(B)–(C). A defendant "has no right to be resentenced when the district court expressly states it did not rely on the challenged information in sentencing." Larson v. United States, 835 F.2d 169, 172 (8th Cir. 1987). Here, the district court stated it would not use the statements in making its decisions. Hopkins therefore has no claim under Bowers.

Hopkins also contends that the statements in the report violate his due process rights because they will be used by the Bureau of Prisons to his detriment in determining his "initial security classification" and his placement within the prison system. He argues that the district court was therefore required to make the requestd strikes. We rejected a similar claim in United States v. Beatty, 9 F.3d 686, 689 (8th Cir. 1993), where the defendant argued that certain information was unnecessary,

irrelevant, and might be used to his prejudice by the Bureau of Prison. We concluded that Rule 32 "does not require that the objected-to material be stricken." Id.

> Neither due process nor Rule 32 requires a district court judge to be an editor as well as an arbiter of justice. Any concerns a defendant might have about prison officials relying on unfounded, detrimental information in his presentence investigation report should be met by a district court's compliance with Rule [32(i)(3)(B)].

Id. (quoting United States v. Turner, 898 F.2d 705, 710 (9th Cir. 1990)). Although Beatty involved a challenge under Rule 32, the First Circuit has squarely rejected a similar due process claim. United States v. Melendez, 279 F.3d 16, 18–19 (1st Cir. 2002) (quoting Turner). We agree and reject Hopkins' claim that due process required the sentencing court to go beyond the requirements of Rule 32 by striking information that was not relied on in sentencing.

IV.

For these reasons Hopkins' conviction and sentence are affirmed.

_____