LILLEHAUG, Justice (dissenting).
In Florida v. Jardines , the United States Supreme Court held that a narcotics-dog sniff at the door of a single-family residence was a "search" in violation of the Fourth Amendment's warrant requirement. 569 U.S. 1, 11-12, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). This is so because the area "immediately surrounding and associated with the home-what our cases call the curtilage-[is] part of the home itself for Fourth Amendment purposes." Id. at 6, 133 S.Ct. 1409 (citation omitted) (internal quotation marks omitted).
Today, the court reads out of Jardines the area "immediately surrounding" the home. The unfortunate result of this omission is discrimination among Minnesotans based on where they live. The search of the door of a single-family home requires a warrant, but the search of the door of an apartment home does not.
But homes are homes. Because Minnesotans' constitutional rights should not depend on the form of their dwelling, I respectfully dissent.
I.
The facts are not in dispute. Based on an anonymous tip and follow-up investigation, *525 police had reason to believe that respondent Cortney John Edstrom was selling methamphetamine out of an apartment building. As part of the investigation, police conducted a warrantless search using a trained narcotics dog. The dog first sniffed doors of apartments not suspected of being associated with drug-dealing.[1] Then the dog came to the door of Edstrom's apartment. The dog sniffed the seam of the door.[2] The dog indicated a positive alert for narcotics.
Based on the investigation, including the dog sniff, the police obtained a search warrant for the interior of Edstrom's apartment. The search produced a variety of incriminating evidence. The district court denied Edstrom's motion to suppress that evidence. Edstrom was convicted. The court of appeals reversed the conviction.
II.
I agree with the court of appeals that the evidence should have been suppressed because the dog sniff was a search without a warrant. See State v. Edstrom , 901 N.W.2d 455, 465 (Minn. App. 2017). The court of appeals, though, based its decision on the theory that the sniff violated Edstrom's reasonable expectation of privacy, id. at 462, a theory proposed by Justice Kagan in her Jardines concurrence, see Jardines , 569 U.S. at 12-16, 133 S.Ct. 1409 (Kagan, J., concurring). I base my analysis on the majority opinion in Jardines , which held that a trained narcotics dog may not sniff the curtilage of a home without a search warrant. See Jardines , 569 U.S. at 11-12, 133 S.Ct. 1409.
In Jardines , officers of the Miami-Dade Police Department, accompanied by a trained narcotics dog, went to the defendant's home after receiving an unverified tip that he was growing marijuana inside. Id. at 3-4, 133 S.Ct. 1409. When the officers arrived, the dog began to "energetically explor[e]" the area on and around the front porch, behavior that indicated that the dog "sensed one of the odors he'd been trained to detect." Id. at 4, 133 S.Ct. 1409. "After sniffing the base of the front door, the dog sat, which is the trained behavior upon discovering the odor's strongest point." Id. On the basis of the dog's positive alert for narcotics, the police applied for and received a search warrant. Id.
In its analysis, the Court characterized the curtilage of a home as the "area around the home [that] is intimately linked to the home both physically and psychologically, ... where privacy expectations are most heightened." Id. at 7, 133 S.Ct. 1409 (internal quotation marks omitted). The concept of curtilage, therefore, is "easily understood from our daily experience." Id. (quoting Oliver v. United States , 466 U.S. 170, 182 n.12, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) ).
The Supreme Court concluded that the front porch of the home "no doubt" was curtilage. Id . The Court reached this holding even though the porch was presumably open for the passing public to view, and that members of the public (including police)
*526 could and did step onto the porch without the express permission of the resident. See generally id. at 6-9, 133 S.Ct. 1409. A person's right to retreat into his or her home and "there be free from unreasonable governmental intrusion" stands at the Fourth Amendment's "very core." Id. at 6, 133 S.Ct. 1409 (quoting Silverman v. United States , 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) ) (internal quotation marks omitted). "This right would be of little practical value," the Court reasoned, "if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity." Id. Accordingly, "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." Id. at 11-12, 133 S.Ct. 1409. Thus, curtilage is "the home and its immediate surroundings." Id.
This case is on all fours with Jardines . Here, as in Jardines , the police brought a trained narcotics dog into the area "immediately surrounding" Edstrom's home. See id. at 3-4, 6, 133 S.Ct. 1409. Here, as in Jardines , the dog sniffed at the seam of Edstrom's front door and gave a positive alert for narcotics. See id. at 4, 133 S.Ct. 1409. Therefore, I conclude that the area where the dog sniff occurred is within the curtilage of Edstrom's home. Consistent with Jardines , I would hold that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." Id. at 11-12, 133 S.Ct. 1409. Because the search was conducted without a warrant, and no applicable exception to the warrant requirement has been asserted or argued, the evidence from the search should have been suppressed.
In concluding to the contrary, the court relies on the factors outlined in United States v. Dunn , 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). My analysis, like the Supreme Court's in Jardines , does not depend on the Dunn factors. The Supreme Court has decided two curtilage cases in recent years- Jardines and Collins v. Virginia , 584 U.S. ----, 138 S.Ct. 1663, 201 L.Ed.2d 9 (2018). Jardines did not cite Dunn or apply its factors. In Collins , the Court determined that a portion of a driveway immediately adjacent to a house was curtilage. See 584 U.S. at ----, 138 S.Ct. at 1670-71. Collins did not cite Dunn or apply its factors. So I question whether the Dunn factors are relevant to curtilage cases involving areas immediately surrounding or adjacent to the home. The Dunn factors seem to be useful in cases that determine the boundaries between curtilage and "open fields." See , e.g. , State v. Chute , 908 N.W.2d 578 (Minn. 2018), petition for cert. filed , (U.S. July 9, 2018) (No. 18-48). This case has nothing to do with open fields.
If the Dunn factors are relevant, then I disagree with how the court evaluates them. The first factor-proximity-clearly shows that the area where the dog sniffed is within the curtilage. As in Jardines , it is the proximity of the apartment door to the apartment interior-the "immediate surroundings"-which allowed the police to "trawl for evidence" at the threshold of Edstrom's home. See Jardines , 569 U.S. at 6, 133 S.Ct. 1409.
The second Dunn factor-whether the area is enclosed-supports my suspicion that Dunn applies only in an "open fields" analysis. If the factor is applicable, I conclude that it is satisfied. The area immediately in front of Edstrom's door is included within an enclosure-a locked building, albeit accessible to police by Knox Box.
The third Dunn factor-"the nature of the use to which the area is put"-cuts in Edstrom's favor. An apartment door and *527 its threshold are integral parts of the apartment. Doors are obviously necessary for apartment life. This explains why the Supreme Court determined that the front porch of a home was curtilage, even though it was open to view and was not put to any particular intimate use. See Jardines , 569 U.S. at 6-7, 133 S.Ct. 1409. As the Court said, "the background social norms that invite a visitor to the front door do not invite him there to conduct a search." Id. at 9, 133 S.Ct. 1409. Certainly we would consider it an unreasonable intrusion for someone (without a warrant) to peep through the keyhole, or place a tiny listening device on, under, or near the apartment door. There is no principled reason that a dog sniff of the door seam is any different.[3] I conclude that this factor is satisfied.
The final Dunn factor-the steps taken to obscure activities from passersby-cuts both ways. It is true that Edstrom had no right as a tenant to obscure the area immediately outside his apartment from the view of residents, the landlord, maintenance people, and others with legitimate business in the building. Yet this class of people is limited, and it does not include members of the general public. The locked door at the entry to the building obscured the area.
On balance, the Dunn factors support my conclusion that this was a warrantless search of curtilage. So does a recent case from the Eighth Circuit-the federal circuit of which Minnesota is a part-applying the Dunn factors to similar facts: United States v. Hopkins , 824 F.3d 726 (8th Cir. 2016). In Hopkins , the defendant lived in a multi-unit townhome complex. Id . at 729. The exterior door of the defendant's townhome, like the other units in the complex, faced an open courtyard. Id. at 729-30. The defendant's door shared the sidewalk leading up to it with the door to another unit, about a foot away. Id. The police brought a narcotics dog to sniff at the defendant's door, and the dog alerted after "sniff[ing] the creases of the door." Id. at 732.
Applying Jardines and the Dunn factors, the Eighth Circuit concluded that the dog sniff was a warrantless search of curtilage. The first and third Dunn factors were easily satisfied. Id. The area where the dog sniffed was immediately in front of the defendant's door, and residents would use the area in front of their doors "every day ... as they came and went." Id. Furthermore, "[p]hotographic evidence show[ed] that the areas next to the doors of these apartments and along the walls [were] used for grilling and storing bicycles." Id. The court acknowledged that "[t]he second and fourth Dunn factors weigh against a finding of curtilage because the front door was not enclosed ... and was not protected from observation by visitors." Id. But, the court recognized, "neither was the front porch in Jardines ." Id. The court concluded that " '[d]aily experience' also suggests that the area immediately in front of the door of the apartments in this complex is curtilage." Id.
*528 (quoting Jardines , 569 U.S. at 7, 133 S.Ct. 1409 ).
The majority attempts to distinguish Hopkins in two respects, both of which are faulty. First, the court describes the door in front of Hopkins' home as "unshared." This description does not tell the full story. In fact, the dog conducted a sniff along a cement landing that was clearly shared by two units and led to Hopkins' exterior door. Id. at 729. Further, the entire courtyard was open to all the residents of at least six units, as well as the general public. Id. at 729, 732. Second, the court describes the Eighth Circuit as having distinguished Hopkins from a previous curtilage case, United States v. Brooks , 645 F.3d 971 (8th Cir. 2011), involving the interior hallway of an apartment building. But, the Eighth Circuit's distinction was based on doctrine, not particular facts. See Hopkins , 824 F.3d at 732 (discussing Brooks and the expectation-of-privacy test from Katz ). Brooks was a Katz /expectation-of-privacy case decided before Jardines . Hopkins was decided based on Jardines , which did not use the reasonable-expectation-of-privacy Fourth Amendment framework. Id. ; see also Jardines , 569 U.S. at 11, 133 S.Ct. 1409 (discussing the difference between the Katz framework and a property-based approach).
Arguably Edstrom presents an even stronger case for curtilage than Hopkins . The area immediately in front of Edstrom's front door was inside a locked hallway, secured against members of the public. Regardless, the ultimate conclusion is the same: people cannot be secure in their homes-whether the home is an apartment, a townhome, or a single-family house-if trained dogs can sniff the immediate surroundings of those dwellings without a search warrant.
III.
Respectfully, the court's narrow reading of Jardines undermines the rights of Minnesotans who live in multi-unit dwellings. To be sure, people of every age, race, and income level live in apartments, whether rentals or condominiums. Nevertheless, as other courts have recognized, "a strict apartment versus single-family house distinction [regarding curtilage] is troubling because it would apportion Fourth Amendment protections on grounds that correlate with income, race, and ethnicity." United States v. Whitaker , 820 F.3d 849, 854 (7th Cir. 2016) ; State v. Kono , 324 Conn. 80, 152 A.3d 1, 26 (2016) (discussing housing disparities relative to race and income).
I read Jardines as standing for the simple proposition that a search of the space at the threshold of a home requires a warrant. Because both the United States and the Minnesota Constitutions protect all of us regardless of the kind of homes in which we dwell, I would hold that the fruits of the dog sniff should have been suppressed.[4] Accordingly, I respectfully dissent.

Even pre-Jardines , these searches appear to have violated the Minnesota Constitution. In State v. Davis , we required a reasonable, articulable suspicion of criminal activity before a police dog could sniff on an apartment door. 732 N.W.2d 173, 176 (Minn. 2007). Edstrom, however, does not argue that the sniff of his apartment door was unlawful because unlawful searches preceded it.

The search warrant affidavit states that the dog sniff occurred "on the door." This statement suggests that the dog's nose touched the door. I will assume, however, as the court does, that the dog sniff occurred at the "door seam." My analysis does not depend on whether the dog's nose touched the door or was only inches from it.

The specific type of investigatory tool has no bearing in the Jardines analysis. The Supreme Court-and this court-has made clear that any warrantless investigatory behavior within the curtilage of the home is a search in violation of the Fourth Amendment, regardless of whether the investigation is conducted with a narcotics dog, a listening device, or simply by the officers themselves. See Jardines , 569 U.S. at 11, 133 S.Ct. 1409 (stating that the "antiquity of the tools" is not relevant "when the government uses a physical intrusion to explore details of the home (including its curtilage)"); Chute , 908 N.W.2d at 585, 588 (concluding that an investigation conducted by a single officer in the curtilage of the home was a search). Thus, it makes no difference whether the sniffing dog has been trained to detect legal or illegal substances or both.

In State v. Davis , after assuming that a dog sniff in an apartment hallway was a "search" under Article I, § 10 of the Minnesota Constitution, we held that such a search need only be supported by reasonable articulable suspicion rather than by a warrant supported by probable cause. 732 N.W.2d at 176, 182 (Minn. 2007). Davis , decided before Jardines , was based on a reasonable-expectation-of-privacy analysis. See id. at 178-80. Because I conclude that a warrantless dog sniff within the curtilage of a home is a search in violation of the Fourth Amendment to the United States Constitution, I would also conclude that it violates the Minnesota Constitution. See State v. McBride , 666 N.W.2d 351, 361 (Minn. 2003) ("While we may interpret the Minnesota Constitution to provide more protection than the U.S. Constitution, it may not afford less.").