GILDEA, Chief Justice.
OPINION
The question presented in this case is whether a warrantless narcotics-dog sniff in the hallway outside respondent's apartment violated respondent's right to be free from unreasonable searches under the United States or Minnesota Constitution. The district court concluded that the dog sniff did not violate respondent's right under either constitution. The court of appeals agreed with the district court that the dog sniff did not occur within the curtilage of respondent's apartment, but the court of appeals nevertheless reversed respondent's convictions, holding that the dog sniff violated respondent's rights under both the United States Constitution and the Minnesota Constitution. Because we conclude that the police did not intrude upon the curtilage of respondent's apartment or violate respondent's reasonable expectation of privacy, we hold that the narcotics-dog sniff did not constitute a search under the Fourth Amendment. We further hold that because the police were lawfully present in the hallway and had a reasonable, articulable suspicion of criminal activity, the narcotics-dog sniff did not violate Article I, Section 10 of the Minnesota Constitution. Accordingly, we affirm in part and reverse in part and remand to the court of appeals.
*515 FACTS
In October 2015, a confidential informant told police that respondent Cortney John Edstrom was selling methamphetamine out of a Brooklyn Park apartment building. The informant also said that Edstrom lived on the third floor of the building, drove a black Cadillac sedan, and that the informant had seen Edstrom with a pistol in the past 3 months. Police showed the informant a photo of Edstrom, and the informant confirmed that the man in the photo was the man selling methamphetamine.
Police corroborated the informant's tip. Specifically, using vehicle registration records, police confirmed that Edstrom owned a black Cadillac, and they determined the license plate number that belonged to that Cadillac. Police later saw Edstrom's black Cadillac with the matching license plate number parked in the parking lot of the apartment building the informant described. When police reviewed the resident directory for that building, they learned that a person Edstrom had listed as an emergency contact lived in apartment 305.
Based on the information described above, police conducted a warrantless, narcotics-dog sniff at the apartment building. After entering the building, officers led a narcotics-sniffing dog to the third-floor hallway. There, the dog sniffed other doors in the hallway on the way to apartment 305 but did not alert. When the dog sniffed the door seam of apartment 305, the dog alerted to the presence of narcotics.[1]
Following the dog sniff, police applied for and received a search warrant for apartment 305. The affidavit in support of the warrant included a report on the dog sniff and the fact that the dog alerted to the presence of narcotics when it sniffed the door seam of the apartment.
When the police executed the search warrant, Edstrom was in the apartment. Police found several firearms, ammunition, scales with methamphetamine residue, marijuana, and approximately 226 grams of methamphetamine. They also found many personal items that belonged to Edstrom.[2]
Based on the evidence discovered in the search of apartment 305, the State of Minnesota charged Edstrom with first-degree sale of methamphetamine, Minn. Stat. § 152.021, subd. 1(1) (2014) ; first-degree possession of methamphetamine, Minn. Stat. § 152.021, subd. 2(a)(1) (2014) ; possession of a firearm by a prohibited person, Minn. Stat. § 624.713, subd. 1(2) (2014) ; and fifth-degree possession of methamphetamine, Minn. Stat. § 152.025, subd. 2(a)(1) (2014).
Edstrom filed a motion to suppress the items found during the execution of the search warrant. Edstrom argued that the narcotics-dog sniff violated his constitutional right to be free from unreasonable searches and that without the dog sniff, the search warrant was not supported by probable cause. At the suppression hearing, in addition to offering testimony about the circumstances of the dog sniff, the State offered testimony about the Knox *516 Box that the police used to enter the apartment building.
This testimony established that a Knox Box is a locked key box that an apartment building owner in Brooklyn Park may choose to have installed on the outside of a building.[3] Anyone with a key to open the Knox Box can access a set of keys for a building. Building owners typically install a Knox Box to facilitate law enforcement access in cases of medical emergencies, criminal complaints, tenant disputes, foot patrols to become familiar with the layout of the building, and dog sniffs. Building owners are generally aware that police occasionally enter their buildings via these boxes.
The district court denied Edstrom's motion to suppress. The court concluded that Edstrom did not have a reasonable expectation of privacy in the area of the hallway outside his apartment. The court also concluded that because the hallway outside Edstrom's apartment was a common area, it was not in the curtilage of the apartment.
The case then proceeded to trial, and the jury found Edstrom guilty of first-degree and fifth-degree possession of a controlled substance, and possession of a firearm by a prohibited person.[4] The district court convicted Edstrom of these three offenses and sentenced him to 134 months in prison.
Edstrom appealed and the court of appeals reversed his convictions. State v. Edstrom , 901 N.W.2d 455, 458 (Minn. App. 2017). The court of appeals first concluded that because the area outside Edstrom's apartment door was not curtilage, no search occurred under a property-rights analysis of the Fourth Amendment. Id. at 460-61. But, relying on Justice Kagan's concurrence in Florida v. Jardines , 569 U.S. 1, 12-15, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), the court of appeals concluded that the narcotics-dog sniff was a search under the Fourth Amendment because it violated Edstrom's reasonable expectations of privacy. Edstrom , 901 N.W.2d at 462-63.
The court of appeals further concluded that under the Minnesota Constitution, a search of Edstrom's home occurred, and that absent exigent circumstances or consent, a warrantless search of a private residence was unreasonable. Edstrom , 901 N.W.2d at 464. The court acknowledged that before Jardines , we had held that under the Minnesota Constitution, " 'police [only] need[ ] reasonable, articulable suspicion to use [a] narcotics-detection dog in the common hallway outside [an] apartment.' " Id. (quoting State v. Davis , 732 N.W.2d 173, 175 (Minn. 2007) ). But, because Edstrom's apartment building was secured, the court of appeals concluded that Davis "d[id] not guide [its] decision." Id. The court then went on to hold that the district court should have suppressed evidence obtained as a result of the dog's positive alert because police did not have a warrant for the dog sniff and no exception to the warrant requirement applied. Id. at 465. And "because the dog's positive alert was essential to probable cause for the warrant," the court further held that the district court erred by denying Edstrom's motion to suppress. Id.
We granted the State's petition for review.
*517 ANALYSIS
On appeal, the State argues that the district court properly denied Edstrom's motion to suppress evidence obtained while executing the search warrant for his apartment. When considering the denial of a pretrial motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. State v. Molnau , 904 N.W.2d 449, 451 (Minn. 2017). The State bears the burden of establishing that the challenged evidence was obtained in accordance with the constitution. State ex rel. Rasmussen v. Tahash , 272 Minn. 539, 141 N.W.2d 3, 13-14 (1965). A defendant, however, bears the threshold burden of proving that he or she has a right protected by the constitution. State v. Gail , 713 N.W.2d 851, 859-60 (Minn. 2006) (rejecting the defendant's claim that cell phone records should have been suppressed because he did "not me[e]t his burden of showing he had a subjective expectation of privacy in the cell phone records").
Edstrom challenges the warrantless narcotics-dog sniff under both the United States and Minnesota Constitutions. The Minnesota Constitution cannot provide less protection than the United States Constitution, but it can provide greater protection. See Kahn v. Griffin , 701 N.W.2d 815, 824 (Minn. 2005). As a result, we first assess Edstrom's rights under the United States Constitution, and then turn to the Minnesota Constitution.
I.
The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A search conducted without a warrant or under a recognized exception to the warrant requirement is generally unreasonable. Katz v. United States , 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ; see Birchfield v. North Dakota , 579 U.S. ----, ----, 136 S.Ct. 2160, 2173, 195 L.Ed.2d 560 (2016). The parties disagree whether a search occurred when officers performed a narcotics-dog sniff in the hallway immediately adjacent to Edstrom's apartment door.
Precedent from the Supreme Court indicates that a search for purposes of the Fourth Amendment occurs in two circumstances. First, there can be a search when the government physically intrudes onto a constitutionally protected area. United States v. Jones , 565 U.S. 400, 406-07 n.3, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). Second, there can be a search when the government intrudes upon a person's reasonable expectation of privacy. Smith v. Maryland , 442 U.S. 735, 739-40, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Because a search under the United States Constitution can occur if one or both criteria are satisfied, see Jones , 565 U.S. at 406-08, 132 S.Ct. 945 (recognizing that Katz did not erode the property-based protections of the Fourth Amendment but augmented them), we examine both whether the dog sniff trespassed onto a constitutionally protected area and whether the dog sniff invaded Edstrom's reasonable expectation of privacy.
A.
We turn first to the question of whether the area outside Edstrom's apartment door is a constitutionally protected area. A person's home is clearly a constitutionally protected area. See U.S. Const. amend. IV. And an area outside the home may be considered "part of the home itself" if it constitutes curtilage. Oliver v. United States , 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). If the police *518 bring a narcotics-sniffing dog on the curtilage of a home, a search occurs under the Fourth Amendment. Florida v. Jardines , 569 U.S. 1, 11-12, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).
The parties dispute whether the dog sniffed in the curtilage of Edstrom's home. The State contends that because Edstrom's apartment door opens onto a common hallway and the dog was standing in the common hallway when he sniffed immediately outside Edstrom's apartment door, the area is not in the curtilage of Edstrom's apartment. Edstrom argues that because the dog sniffed the door and the door seam and because a tenant "is certainly entitled to a degree of privacy immediately outside his or her door," the sniff occurred in a constitutionally protected area.
To determine whether an area is curtilage, "we look to 'whether the area in question is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.' " State v. Chute , 908 N.W.2d 578, 584 (Minn. 2018) (quoting United States v. Dunn , 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) ); see also 4 William Blackstone, Commentaries *223, *225-26 (discussing curtilage). The curtilage of a home is defined "by reference to factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." Oliver , 466 U.S. at 180, 104 S.Ct. 1735. The "central component ... [is] whether the area harbors the intimate activity associated with the sanctity of a [person's] home and the privacies of life." Dunn , 480 U.S. at 300, 107 S.Ct. 1134 (citation omitted) (internal quotation marks omitted). Defining the exact contours of curtilage is a fact-intensive inquiry, see id. at 301, 107 S.Ct. 1134, but it is often " 'easily understood from our daily experience.' " Jardines , 569 U.S. at 7, 133 S.Ct. 1409 (quoting Oliver , 466 U.S. at 182 n.12, 104 S.Ct. 1735 ).
The Supreme Court has identified four factors (the Dunn factors) that are helpful in determining whether an area is so closely associated with the home that the protections of the Fourth Amendment extend to it: (1) the proximity to the home; (2) whether it is fenced with the home; (3) what the area is used for; and (4) any steps taken to obscure activities in the area from passersby. Dunn , 480 U.S. at 301, 107 S.Ct. 1134.[5]
The first factor suggests that the hallway immediately adjacent to Edstrom's apartment door could be part of the curtilage of the apartment. This area is physically very close to his home-it is immediately adjacent. But the rest of the Dunn factors support the conclusion that the area immediately outside the apartment door is not curtilage. See Lindsey v. State , 226 Md.App. 253, 127 A.3d 627, 642-43 (2015) (applying the Dunn factors and holding that a narcotics-dog sniff in the hallway outside the defendant's apartment did not occur in the curtilage of that apartment in part because "the area was observable by a passerby" and the intimate activities of the home did not extend to the hallway outside the defendant's apartment). The area outside the door is not fenced or otherwise enclosed with the home. It is effectively part of a common hallway and nothing physically separates *519 the area from the rest of the hallway. The area immediately in front of the apartment door is used for ingress and egress to the apartment. But the record does not establish that Edstrom used the area outside the door or that this area is anything other than the common hallway.
Moreover, Edstrom did not establish that he exclusively uses or possesses the hallway.[6] Instead, other tenants and the police walk in and use this area jointly with Edstrom. Thus, this area has many uses that are not associated with Edstrom's home. Finally, the record does not show that Edstrom made any attempt to obscure the area from the people with whom he jointly used the hallway. On the whole, our analysis of the Dunn factors supports the conclusion that the area where the dog sniffed was not the curtilage of Edstrom's home.
Our precedent reinforces this conclusion. In State v. Milton , we held that an external landing and adjacent steps leading to the upper-level residential unit of a duplex were not curtilage. 821 N.W.2d 789, 800-01 (Minn. 2012). We concluded that these locations were not curtilage because they were a common area in which the residents had a " 'diminished' expectation of privacy," and were " 'not subject to the exclusive control of one tenant [but were] utilized by tenants generally and the numerous visitors attracted to a multiple-occupancy building.' " Id. at 799 (quoting State v. Krech , 403 N.W.2d 634, 637 (Minn. 1987) ). Other courts have similarly concluded that the area outside an apartment door is not curtilage of the apartment because the apartment resident does not have an expectation of privacy in the area outside the apartment. Lindsey , 127 A.3d at 644 ("[B]ecause the area outside of appellant's [apartment] door was within a common area, he did not have a reasonable expectation of privacy in the same."); State v. Nguyen , 841 N.W.2d 676, 678-79, 682 (N.D. 2013) (holding that a narcotics-dog sniff in the hallway outside the defendant's apartment did not occur in the curtilage of that apartment, even when the building was secured and tenants kept items in the hallway).
The Milton analysis confirms that the area where the dog sniffed in this case was not curtilage. No evidence in the record supports the conclusion that Edstrom made any effort to keep the area outside his apartment private from other tenants or others lawfully inside the apartment building. And Edstrom has failed to establish that he has the right to exclude others from the area outside his apartment.
*520 Indeed, a tenant may have the right to exclude others from his or her apartment because the apartment is within the tenant's exclusive possession. A tenant's right to exclude does not, however, extend to the common areas of the building because tenants generally have no possessory right to the common areas. Ordinarily, only the landlord retains a possessory right in the common areas of a building. See Iverson v. Quam , 226 Minn. 290, 32 N.W.2d 596, 600 (1948). Edstrom, like all tenants in the building, undoubtedly has the right to access his apartment through the common areas, but he did not demonstrate that he has any particular right to exclusively possess or control the common areas beyond the confines of his apartment.[7] See Milton , 821 N.W.2d at 799 (recognizing that a common area of a duplex was not curtilage, in part, because the area was "not subject to the exclusive control of one tenant" (citation omitted) (internal quotation marks omitted) ). And any person inside the apartment building may enter this area from the common hallway. Those entering include not only other tenants and their invited guests, but in this case, the police. The record shows that the police have a key to the building and the owner's consent to enter the building's common areas for any law-enforcement-related purpose, including narcotics-dog sniffs. While the building may not have been open to the public at large, it was certainly open to the police.[8]
Based on the record here, we conclude that the privacies of life associated with the home do not extend into the area immediately outside Edstrom's apartment, such as the door seam. Accordingly, the area immediately outside Edstrom's door is not curtilage of Edstrom's home.
In urging us to reach the opposite conclusion, Edstrom relies on Jardines . But the narcotics-dog sniff in Jardines occurred on the front porch of a single-family home, an area commonly understood to be part of the curtilage of the home. 569 U.S. at 7, 133 S.Ct. 1409. The area immediately adjacent to Edstrom's apartment door is not analogous to the front porch in Jardines because it is located in an internal, common hallway that other tenants and the police jointly use and access with Edstrom. Jardines , therefore, does not control the curtilage question presented in this case.
Edstrom also cites to People v. Burns , 401 Ill.Dec. 468, 50 N.E.3d 610 (Ill. 2016). But that case involved a narcotics-dog sniff of a semiprivate landing shared with one other apartment inside a secured building to which the police were not given access by the apartment building's owner. Id. , 401 Ill.Dec. 468, 50 N.E.3d at 620-21. Other cases where courts have concluded that a search occurred because a drug-sniffing dog entered the curtilage of an apartment are likewise factually inapposite because they involved an exterior entryway to an individual apartment that was analogous to the front porch of Jardines . See United States v. Hopkins , 824 F.3d 726, 732 (8th Cir. 2016) (holding that a narcotics-dog *521 sniff in the area 6 to 8 inches in front of an unshared, exterior door to a townhome occurred on curtilage, and expressly deferring a decision on how Jardines would apply to a common interior hallway);[9] State v. Rendon , 477 S.W.3d 805, 810 (Tex. Crim. App. 2015) (concluding that a narcotics-dog sniff on a separate, external, front balcony that served as the only entrance to an apartment occurred on curtilage).
In sum, we conclude that Edstrom has not met his burden of showing that a physical intrusion on a constitutionally protected area occurred when police conducted a narcotics-dog sniff in the hallway immediately adjacent to his apartment. The facts in the record do not establish that the area immediately adjacent to Edstrom's apartment door is part of the curtilage of his apartment, and therefore part of a constitutionally protected area. Accordingly, we affirm this portion of the court of appeals' decision.
B.
We turn next to consider whether, as Edstrom argues and the court of appeals concluded, the narcotics-dog sniff in the hallway immediately adjacent to Edstrom's apartment door invaded his reasonable expectation of privacy and was therefore a search under the Fourth Amendment. The Supreme Court has relied on a two-prong test to determine if an expectation of privacy is reasonable and therefore protected by the Fourth Amendment: first, a person must "exhibit[ ] an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " Katz , 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring); see Smith , 442 U.S. at 740, 99 S.Ct. 2577 (expressly adopting the formulation of Justice Harlan's concurring opinion in Katz ).
Under this test, even government activity that does not physically intrude upon the home can invade a reasonable expectation of privacy. The use of "a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion ... is a 'search' and is presumptively unreasonable without a warrant." Kyllo v. United States , 533 U.S. 27, 40, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (holding that police use of a thermal-imaging device while in a car lawfully parked on the street to gather information about the interior of a home was a search). The essential question is not whether the government uses such a device, but whether that device is "capable of detecting lawful activity" as well as illegal activity.
*522 Illinois v. Caballes , 543 U.S. 405, 409-10, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (holding that using a narcotics-sniffing dog to sniff a vehicle during a lawful traffic stop was not a search).
A dog sniff is not capable of detecting legal activity because a dog sniff "discloses only the presence or absence of narcotics, a contraband item." United States v. Place , 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The Supreme Court has held that "any interest in possessing contraband cannot be deemed 'legitimate.' " Caballes , 543 U.S. at 408, 125 S.Ct. 834 (quoting United States v. Jacobsen , 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ). Accordingly, "governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest.' " Id. (quoting Jacobsen , 466 U.S. at 123, 104 S.Ct. 1652 ). Consistent with Place and Caballes , narcotics-dog sniffs, because they cannot disclose lawful activity, do not implicate an expectation of privacy that society recognizes as reasonable, and as a result, they are not searches.
Against the weight of this precedent, Edstrom and the court of appeals rely on Justice Kagan's concurrence in Jardines to support the conclusion that the dog sniff was a search. Justice Kagan's concurrence offers a different treatment of dog sniffs, concluding that the sniff at issue in Jardines should be controlled by Kyllo . Jardines , 569 U.S. at 14, 133 S.Ct. 1409. Justice Kagan reasoned that a drug-sniffing dog is analogous to the thermal-imaging device at issue in Kyllo because it also allowed police to explore otherwise unknowable details of the home. Id. at 14-15, 133 S.Ct. 1409. Focusing solely on the fact that drug-sniffing dogs are not in general public use, she made no distinction between the limited nature of what drug-sniffing dogs detect-contraband-and the indiscriminate nature of the thermal imager at issue in Kyllo , which detects information about a wide variety of lawful and highly personal conduct. See id. Because a narcotics dog was a "super-sensitive instrument" that disclosed the contents of the home, Justice Kagan concluded that bringing a drug-sniffing dog to the door of a home violated a reasonable expectation of privacy. Id. at 12-13, 133 S.Ct. 1409.
We are not persuaded that we should depart from the reasoning of Place and Caballes . In Caballes , the Court made clear that a narcotics dog is not the super-sensitive instrument the Court was concerned with in Kyllo because such a dog discloses only illegal activity. Caballes , 543 U.S. at 409-10, 125 S.Ct. 834.[10] There is no record evidence here that calls that premise into doubt-such as evidence of the dog's unreliability or a history of alerts to legal substances. See State v. Davis , 732 N.W.2d 173, 179 n.11 (Minn. 2007) (citing *523 Jacobson v. $55,900 in U.S. Currency , 728 N.W.2d 510, 529 (Minn. 2007) (explaining that the reliability of narcotics dogs is assessed on a case-by-case basis) ).
Because the narcotics-dog sniff could identify only the presence or absence of contraband, we hold that under Caballes and Place , the police did not violate Edstrom's reasonable expectation of privacy. Therefore, under the privacy-rights analysis of the Fourth Amendment, no search occurred. Accordingly, we reverse the court of appeals' conclusion that the narcotics-dog sniff violated Edstrom's reasonable expectation of privacy and therefore was unlawful under the Fourth Amendment.
II.
Even though the narcotics-dog sniff was not a search under the United States Constitution, Edstrom also argues that the dog sniff violated the Minnesota Constitution. The court of appeals concluded that Minnesota's constitution prohibits a warrantless dog-sniff at an apartment door. 901 N.W.2d at 464. The Minnesota Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." Minn. Const. art. I, § 10. This provision of the Minnesota Constitution is "textually identical" to the Fourth Amendment. State v. Carter , 697 N.W.2d 199, 209 (Minn. 2005). Because of the textual similarity, "we will not construe our state constitution as providing more protection for individual rights than does the federal constitution unless there is a principled basis to do so." Kahn , 701 N.W.2d at 824.
We have already determined that the use of a narcotics-sniffing dog in the hallway of an apartment building is a search under the Minnesota Constitution. See Davis , 732 N.W.2d at 177. But we held that because of the minimally intrusive nature of a dog sniff, something less than a warrant is required: police need only reasonable, articulable suspicion of criminal activity in order to conduct a dog sniff, provided they are lawfully present in the place where the sniff is conducted. Id. at 180-82.[11]
The sniff of Edstrom's apartment door was a constitutional search under Davis . The record shows that police were lawfully present in the hallway because they had the building owner's permission to be in the building to conduct law-enforcement-related activities. Moreover, Edstrom concedes, and we agree, that the police had a reasonable, articulable suspicion of criminal activity when they conducted the narcotics-dog sniff. Davis , therefore, is satisfied.
Instead of arguing that the Davis standard is not met, Edstrom attempts to distinguish Davis in two ways. First, he argues that Davis was concerned with a sniff only in the common hallway, while in this case, a sniff on the door and door seam occurred. Therefore, he contends, the sniff in this case intruded upon an area where he would have a greater expectation of privacy than in the common hallway we considered in Davis . See Davis , 732 N.W.2d at 176. In Davis , however, we acknowledged that the search warrant affidavit stated that the narcotics dog sniffed at the threshold of the door. Id. at 175.
*524 Any distinction in this case between the seam of the door and the threshold of the door is one without difference. Both refer to areas in the hallway immediately adjacent to the door, and indisputably beyond the interior of the apartment.
Second, Edstrom argues that because the building in Davis was open to the public, and the building in this case is open only to those with keys to the building, the cases are distinguishable. Edstrom is correct that unlike in Davis , the public at large did not have access to the hallway in his building. The fact remains, however, that anyone with keys, including the police, had access to this building. While Edstrom may reasonably expect that persons without keys will not access the building, he may not reasonably expect that police will not use the keys voluntarily provided to them by the building owner to access the building for law-enforcement-related purposes.
In sum, Davis controls the analysis of Edstrom's unreasonable-search claim under the Minnesota Constitution. Because officers were lawfully present in the building and had a reasonable, articulable suspicion of criminal activity, we hold that the dog sniff of the hallway immediately adjacent to Edstrom's apartment door, while a search, was legal under the Minnesota Constitution. Accordingly, we reverse the court of appeals and hold that there was no violation of Article I, section 10 of the Minnesota Constitution.
CONCLUSION
For the foregoing reasons, we affirm in part and reverse in part the decision of the court of appeals, and remand to the court of appeals for further proceedings.[12]
Affirmed in part, reversed in part, and remanded.
HUDSON, J., took no part in the consideration or decision of this case.
THISSEN, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.
DISSENT

The parties do not dispute that the dog was in the hallway immediately adjacent to Edstrom's apartment door when he sniffed and alerted. But beyond stating in the search warrant application that the dog "provided a positive alert for narcotics at the door seam" of the apartment, the record does not describe where precisely the dog sniffed.

The record indicates that Edstrom was living in apartment 305 when the police conducted the narcotics-dog sniff. The State does not suggest otherwise. As a result, we will refer to apartment 305 as Edstrom's apartment.

The record establishes that most apartment buildings in Brooklyn Park have Knox Boxes and that each Brooklyn Park police officer has a key to open the Knox Boxes.

The jury acquitted Edstrom of first-degree sale of methamphetamine.

While these factors provide an analytical tool, both the Supreme Court and our court have determined whether an area is curtilage without applying the Dunn factors. See Collins v. Virginia , 584 U.S. ----, ----, 138 S.Ct. 1663, 1670-71, 201 L.Ed.2d 9 (2018) ; Jardines , 569 U.S. at 6-7, 133 S.Ct. 1409 ; State v. Milton , 821 N.W.2d 789, 798-800 (Minn. 2012).

The dissent argues that the door is an "integral part" of the apartment and is necessary for apartment life, and that conducting a search in that area would be an "unreasonable intrusion." The dissent reaches this conclusion by comparing a dog sniff to a tiny listening device placed on, under, or near the door, and to an officer peering through the keyhole, and then asks why a dog sniff is any different. But there was no police listening or peering in this case. Moreover, the hypothetical intrusions the dissent posits are like the device at issue in Kyllo v. United States , 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) -these intrusions would disclose both criminal activity and legal activity. Id. at 35-36, 121 S.Ct. 2038 (describing information obtained from thermal imaging outside of a home). A dog sniff is, however, fundamentally different: it discloses only the presence of contraband.
Jardines did not disturb this well-settled treatment of dog sniffs. It was not merely the presence of the dog sniffing for narcotics that constituted a search in Jardines ; it was the government agents entering the curtilage of the home not simply to talk to the occupant-just as any person could do-but to search for evidence of a crime. See Jardines , 569 U.S. at 9, 133 S.Ct. 1409. The presence of the dog is immaterial if there is no entry into the curtilage, nor does the presence of a dog create curtilage where it would not otherwise be.

In State v. Luhm , the court of appeals assessed whether a dog sniff in a hallway of a secured condominium building was a search. 880 N.W.2d 606, 609 (Minn. App. 2016). In reaching the conclusion that it was not, the court consulted the building rules and regulations in the record and noted that they expressly precluded Luhm from keeping any property in the hallway, undercutting his claim that part of the hallway was curtilage of his condominium. Id. at 617. The lease for Edstrom's apartment is not in the record and neither are any applicable building rules or regulations.

The building owner here was not required to have a Knox Box. We express no opinion about whether our analysis would be different in such a situation.

The Eighth Circuit in Hopkins distinguished that case from its earlier decision in United States v. Brooks , 645 F.3d 971, 975 (8th Cir. 2011), in part because Hopkins did not involve a common internal hallway that other tenants and their guests used. See Hopkins , 824 F.3d at 732. It is true, as the dissent notes, that the courts in Hopkins and Brooks applied different legal frameworks, and that this difference is partially responsible for the different outcomes.
The court in Hopkins , however, was clear that it was the shared pathway leading to the front door, not the front door itself that "created an implied invitation for a visitor to go up and knock on one or both doors." Id. Because the dog sniff exceeded the scope of that license, a search occurred. Id. at 732-33. In contrast to an exterior door where police have only a limited license to approach, the dog sniff of Edstrom's apartment door occurred in a place where the police were expressly invited to enter. The building owner authorized police to enter the building for any law-enforcement purpose, a far broader license than that of any ordinary citizen who is granted admittance to the building for the limited purpose of calling on a resident's apartment.

We also reject the argument that the holding of Caballes does not apply because of the nature of the item searched in that case. See Jardines , 569 U.S. at 14 n.1, 133 S.Ct. 1409 (Kagan, J., concurring); Edstrom , 901 N.W.2d at 463. Caballes involved a narcotics-dog sniff of a car, see 543 U.S. at 407, 125 S.Ct. 834, and people have a diminished expectation of privacy in cars, see Arizona v. Gant , 556 U.S. 332, 345, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Place , however, disposes of the argument that the nature of the item searched is relevant. It was not the nature of the luggage searched in Place that made the dog sniff legal; it was the minimally intrusive nature of the dog sniff itself. See 462 U.S. at 707, 103 S.Ct. 2637. The Court recognized that luggage, even when separated from its owner, still enjoyed the protection of the Fourth Amendment. Id. ; see United States v. Chadwick , 433 U.S. 1, 13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (noting that luggage, as a repository of personal effects, has a greater expectation of privacy than a vehicle), abrogated on other grounds by California v. Acevedo , 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

In Davis , we said that "[a] tenant must expect that other people will lawfully be in the hallway and be able to smell odors emanating into the public space." 732 N.W.2d at 180. We concluded, based on the record in that case, that the hallway must be treated as accessible to the public. Id. Finally, we noted that Davis had made no argument that the curtilage of his apartment had been violated, and reserved judgment about what level of suspicion would be required to search the curtilage. Id. at 179 n.10.

Because the court of appeals reversed Edstrom's convictions based on its reasonable-expectation-of-privacy analysis, it did not address alternative arguments Edstrom made in support of his appeal of his convictions. See Edstrom , 901 N.W.2d at 465 n.4. On remand, the court of appeals will need to address these claims.